# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

REFUGIO VILLALOBOS,

      Plaintiff,

v.                                       No. CV-15-00463-CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff Refugio Villalobos' *Motion to Remand or Reverse*, (Doc. 17), and *Plaintiff's Brief in Support of Motion to Reverse or Remand*), (Doc. 18), both filed September 15, 2015, (together the "Motion"; Defendant's *Brief in Response to Plaintiff's Motion to Reverse or Remand* ("Response"), (Doc. 22), filed January 19, 2016; and *Plaintiff's Reply in Support of Motion to Reverse or Remand* ("Reply"), (Doc. 24), filed February 4, 2016.

On January 5, 2012, Mr. Villalobos filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, alleging disabilities commencing on April 26, 2010. (Administrative Record "AR" 157). Mr. Villalobos' claim for benefits was initially denied, (AR 77), and subsequently denied upon reconsideration. (AR 79). A request for a hearing was filed on April 4, 2013, (AR 85-86), and a hearing was held on July 31, 2014 before Administrative Law Judge ("ALJ") Michelle K. Lindsay. (AR 46-74). Mr. Villalobos and Thomas Greiner, an impartial vocational expert ("VE"), testified at the hearing. (*Id.*). A Spanish-English language interpreter was also present at the hearing for Mr. Villalobos. (AR 48). Mr.

Villalobos was not represented at the hearing and signed a waiver of his right to representation. (AR 134). ALJ Lindsay issued an unfavorable decision on December 22, 2014, finding that Mr. Villalobos was not disabled on or before April 26, 2010 through the time of the decision. (AR 26-45). Through counsel, Mr. Villalobos filed an application for review by the Appeals Council on January 29, 2015, (AR 25), which was denied on May 1, 2015, (AR 1-7), making the decision of ALJ Lindsay the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Villalobos argues that the ALJ committed reversible, legal error because: (1) Mr. Villalobos did not and could not have knowingly waived his right to counsel; (2) the interpreter was not sworn in until after evidence was taken; (3) the finding of non-severity at step two was erroneous; (4) the prospect of corrected vision should have been analyzed at step four , not step two of the sequential evaluation process; and (5) there was an improper credibility analysis. (Doc. 18 at 7-18). Additionally, Mr. Villalobos argues that the Appeals Council erroneously rejected new evidence of a mental impairment. (Doc. 18 at 9-11).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Appeals Council improperly dismissed Mr. Villalobos' new evidence of a mental impairment, the Court finds that the Motion should be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

## I.     Standard of Review

The standard of review in a Social Security appeal is whether the
Commissioner's final decision is supported by substantial evidence and whether the
correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir.
2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98
(10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct
legal standards were applied, the Commissioner's decision stands and the plaintiff is not
entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v.
Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760
(10th Cir. 2003). A court should meticulously review the entire record but should neither
re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*,
373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the
Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's
decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v.
Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365
F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial
evidence if it is overwhelmed by other evidence in the record or if there is a mere
scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.
While a court may not re-weigh the evidence or try the issues *de novo*, its examination
of the record as a whole must include "anything that may undercut or detract from the
ALJ's findings in order to determine if the substantiality test has been met." *Grogan v.*

3

*Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of DIB, a person establishes a disability when he is unable

"to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of

this definition for disability, a five-step sequential evaluation process ("SEP") has been

established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v.

Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) he

is not engaged in "substantial gainful activity"; (2) he has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and (3) his impairment(s) either meet or equal one

of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform

his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan*,

399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant

work, she will proceed to step five of the evaluation process. At step five the burden of

proof shifts to the Commissioner to show the claimant is able to perform other work in

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III.    Background

Mr. Villalobos initially applied for DIB alleging several medical impairments: blindness in his right eye, blurry vision in his left eye, diabetes, and high blood pressure. (AR 173). As proof of these medical impairments, Mr. Villalobos submitted records from several doctors dated from 2010 to 2014. (AR 288-347).

At step one, the ALJ determined that Mr. Villalobos meets the insured status requirement through June 30, 2020 and that he had not engaged in substantial gainful activity after April 26, 2010. (AR 35). At step two, the ALJ found that Mr. Villalobos had several medically determinable impairments: blind right eye; left vision correctable to 20/20; diabetes mellitus; hypertension; hypercholesterolemia; and amputation of distal phalanx of non-dominant thumb and index finger. (AR 36) However, the ALJ found that Mr. Villalobos did not have a severe impairment or combination of impairments pursuant to 20 C.F.R. § 404.1521 *et seq.* (*Id.*).

### IV.    Analysis

Mr. Villalobos argues that the ALJ committed reversible, legal error because: (1) Mr. Villalobos did not and could not have knowingly waived his right to counsel; (2) the interpreter was not sworn in until after evidence was taken; (3) the finding of non-severity at step two was erroneous; (4) the prospect of corrected vision should have been analyzed at step four, not step two of the SEP; and (5) there was an improper credibility analysis. (Doc. 18 at 7-18). Additionally, Mr. Villalobos argues that the

Appeals Council erroneously rejected new evidence of a mental impairment. (Doc. 18 at 9-11).

The Commissioner responds that Mr. Villalobos knowingly waived his right to counsel. (Doc. 22 at 9). The Commissioner states that the ALJ reasonably found that Mr. Villalobos did not have any severe impairment, as the medically determinable impairments were long standing and Mr. Villalobos worked while afflicted with them. (Doc. 22 at 5). Finally, the Commissioner argues that even if the Appeals Council should have accepted the new evidence, given that no reasonable fact-finder could find Mr. Villalobos disabled based on the evidence, any error in that regard would be harmless. (*Id.* at 7-9).

A. <u>Knowing Waiver of Right to Counsel in Social Security Cases</u>

The Social Security Administration's ("SSA") Hearings, Appeals and Litigation Law Manual ("HALLEX") requires that where a claimant is unrepresented, "the ALJ will ensure on the record that the claimant has been properly advised of the right to representation and that the claimant is capable of making an informed choice about representation." SSA, HALLEX I-2-6-52, *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-52.html. ALJ's are not required to "recite specific questions regarding the right to representation or the claimant's capacity to make an informed choice about representation." *Id.* If a claimant is illiterate, the ALJ must explain that both free and contingent representation is available to the claimant. *Id.* Finally, an ALJ is required to have a claimant sign a written waiver of the right to counsel. *Id.* Additionally, 42 U.S.C. § 406 requires the Commissioner to notify all claimants in writing, "together with the notice to such claimant of an adverse

6

determination, of the options for obtaining attorneys . . . ." *See also* 20 C.F.R. § 404.1706 ("[W]e will include with the notice of [adverse] determination or decision information about your options for obtaining an attorney . . .").

    *1. The ALJ's Waiver of Representation Instructions*

    Mr. Villalobos argues that he did not knowingly waive his right to be assisted by counsel because he did not understand that he would not have to pay for a lawyer and the ALJ did not advise him that there are free legal services available to help him. (Doc 18. at 7). Additionally, Mr. Villalobos alleges that a SSA employee told him that he should not obtain a lawyer because they "just take [people's] money." (AR 49). The Commissioner states that the ALJ adequately advised Mr. Villalobos of his rights both at the hearing and through notices leading up to the hearing, which were provided in Spanish. (Doc. 22 at 9).

    The record in this case reflects that the ALJ specifically told Mr. Villalobos that he had the right to be represented by counsel. (AR 49). The ALJ further advised Mr. Villalobos that

> [m]ost attorneys charge on a contingency basis, which means they only collect a fee if they win the case for you and, in that event, their fee would be equal to 25 percent of any back award you might be due, up to $6,000, whichever is less. And if they do not win the case they wouldn't charge you a fee.

(AR 49-50).[2] After explaining this information to Mr. Villalobos, through an interpreter, the ALJ asked Mr. Villalobos to sign a waiver of representation form. (AR 51). Although

---

[2] The Court will assume that counsel for Mr. Villalobos overlooked this exchange in the transcript and did not deliberately mislead the Court when she stated that "[t]he ALJ did not tell Mr. Villalobos that she had a duty to protect him from exploitation by unscrupulous lawyers by having to authorize any fee, and control the amount thereof. Accordingly, if [Mr. Villalobos] were fully informed he would have known that retention of a lawyer would have resulted in no liability for fees if the result were – as it turned out to be – a denial of his appeal." (Doc. 24 at 3).

the waiver was in English and there was no Spanish translation, the interpreter helped Mr. Villalobos fill out and sign the form. (*Id.*).

Mr. Villalobos argues that the ALJ improperly failed to inform him that free representation was available to him, as required by HALLEX because Mr. Villalobos is illiterate. However, Mr. Villalobos is not illiterate as he stated that he can both read and write in Spanish.[3] (AR 53). As a result, the Court finds that the ALJ did not violate the relevant provisions of HALLEX.

More importantly, the ALJ's explanation of Mr. Villalobos' right to counsel clearly meets the requirements of the Tenth Circuit. The Tenth Circuit only requires written notice that advises a claimant of their right to be represented by counsel. *See Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996) (neither 42 U.S.C. § 404.1706 406(c) nor 20 C.F.R. § 404.1706 requires more than written advisement of the claimant's right to be represented); *Garcia v. Califano*, 625 F.2d 354, 356 (10th Cir. 1980) (neither the statute nor the regulations require anything more than written notice of the claimant's right to representation by an attorney). As Mr. Villalobos received notices in Spanish and English leading up to the hearing, (AR 87-101, 102-118), and was informed of his rights by the ALJ, with the assistance of an interpreter, before signing the waiver, Mr. Villalobos knowingly waived his right to an attorney.

Counsel for Mr. Villalobos argues that the Court should not follow *Garcia* or *Carter* because the opinions do "not discuss internal administrative directives such as H[ALLEX], thus [it] is unclear as to whether the rules had not yet been promulgated in their current form and tenor." (Doc. 24 at 4 n. 3, 5). *Garcia* and *Carter* are binding

---

[3] Although Mr. Villalobos' Reply labels him as "allegedly functionally illiterate," he states in his testimony that although he cannot read and write in English, he is able to do so in Spanish. (AR 53).

precedent for this Court, and Mr. Villalobos has not provided any authority indicating

otherwise. Additionally, there is no statutory or regulatory basis for Counsel's argument.

   *2.  Effect of Mental Condition on Knowing Waiver*

   Mr. Villalobos argues that the ALJ should have taken his mental impairment into

account when determining whether Mr. Villalobos knowingly waived his right to counsel.

This argument is unpersuasive. First, in support of his argument, Mr. Villalobos provides

no authority from this Circuit, and instead relies on an unpublished case from the District

of New Jersey. *See George v. Comm'r of Soc. Sec.*, No. Civ.A. 13-5179 FLW, 2014 WL

3955071, at *3 (D.N.J. Aug. 13, 2014) (unpublished). As an initial matter, that decision

is not binding on this Court. Further, the Tenth Circuit previously stated that "even

assuming we would impose a heightened duty on the [ALJ] to ensure a mentally

impaired claimant makes an intelligent and knowing waiver of counsel, a duty clearly not

met here, we would find no error. The absence of counsel alone is not sufficient

ground[s] for remand." *Merriman v. Chater*, No. 95-7080, 82 F.3d 426 (Table), *1 (10th

Cir. April 12, 1996) (unpublished) (Holding that a remand is unnecessary if the record at

the hearing was fully and fairly developed).

   Second, even if the Court were to follow the reasoning in *George*, it is clearly

distinguishable from the case at bar.  In *George*, there was testimony at the hearing

regarding the mental capacity of the claimant "that should have called into question her

ability to knowingly and intelligently waive her right to counsel." *Id*. Here, there was no

indication by Mr. Villalobos or in any of his medical reports that he had any mental

limitations. In fact, Raul Neftali Young-Rodriguez, M.D., performed a consultative exam

on Mr. Villalobos in May 2012 and found him to be "alert. His personal hygiene was

9

good. He followed simple directions well. There was no evidence of mental abnormality." (AR 359).

Mr. Villalobos' counsel bases her argument on the fact that "it was apparent to counsel that [Mr.] Villalobos was functioning at a below average intellectual level[,]" (Doc. 18 at 2), which she notes again in her Reply: Mr. Villalobos' "questionable mental state was apparent to the undersigned counsel who, in turn, referred him for the psychological evaluation[,]" and "Mr. Villalobos' apparent marginal intellectual functioning was immediately apparent to the undersigned counsel when he came in [ ] with his adverse opinion." (Doc. 24 at 2). Although Mr. Villalobos' mental impairment may have been clear to Counsel, this is not the standard that trigger's an ALJ's duty to further investigate. An ALJ is "responsible . . . to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (internal quotations omitted)). A mental impairment was not an issue that was raised when the case was before the ALJ.

Counsel further asks the Court to hold that the ALJ should have known about Mr. Villalobos' mental state based on an examination performed <u>after</u> the ALJ issued her opinion. (Doc. 18 at 8, 11). Although an ALJ "has a basic duty of inquiry to fully and fairly develop the record as to material issues[,]" the "burden to prove disability in a social security case is on the claimant." *Baca v. Dep't of Health & Human Servs*., 5 F.3d 476, 479-80 (10th Cir. 1993); *Hawkins*, 113 F.3d at 1164. Mr. Villalobos did not "bring to [the ALJ's] attention" any evidence of a mental impairment. 20 C.F.R. § 404.1512(a).

Therefore, this Court finds that the ALJ did not make a legal error by not considering Mr. Villalobos' mental state when accepting his waiver of representation.

   *3. Swearing in an Interpreter*

   As part of his knowing waiver argument, Mr. Villalobos also argues that the interpreter was not sworn in until after Mr. Villalobos waived his right to counsel, which he argues "would appear to make [the] purported waiver incompetent evidence." (Doc. 18 at 9). The Commissioner argues that Mr. Villalobos cannot show prejudice from the fact that the interpreter was not sworn in before the waiver questioning. (Doc. 22 at 10). Additionally, the Commissioner states that even if the waiver discussion was excluded from the record, Mr. Villalobos still received adequate notices about his right to representation before the hearing. *Id.*

   The HALLEX manual states that an oath for an interpreter should be administered after the interpreter states her relationship to a claimant and before the claimant testifies. HALLEX, I-2-6-54. Mr. Villalobos is correct that the ALJ spoke to him about the waiver prior to swearing in the interpreter. However, the ALJ swore in the interpreter before Mr. Villalobos actually testified. The ALJ specifically states in the record, "before I administer an oath to you, Mr. Villalobos, I need to give an oath to your interpreter, so Ms. Gaiweb, will you please raise your right hand?" (AR 52). It is clear from the transcript that the interpreter was sworn in before Mr. Villalobos began to testify.

   Mr. Villalobos does not provide any Tenth Circuit precedent that states an interpreter must be sworn in before an ALJ has any communication with a claimant. Mr. Villalobos again relies on *George*; however, an interpreter was not involved in the case

11

and there was no question about the timing of testimony.  Counsel's counterargument to

the Commissioner that Mr. Villalobos was

> prejudiced by the loss of his case. Just as the prejudice to Earl Gideon, Ernesto Miranda[,] and others is shown by the procedural omission in their cases, and the eventual issue of their final guilt or innocence must wait for a later day, so must a determination of Mr. Villalobos' disability wait until he has an attorney and a proper interpreter[,][4]

is unpersuasive. (Doc. 24 at 5). Unlike a criminal matter, a SSA hearing is "a

nonadversarial proceeding," and in this case, the ALJ insured that Mr. Villalobos had an

interpreter to assist him and he made a knowing waiver of his right to counsel. *Madrid*,

447 F.3d at 790.

4.  *Additional Evidence Provided to the Appeals Council*

Finally, Mr. Villalobos argues that the Appeals Council erred in rejecting new

evidence of his mental state. (Doc. 18 at 9). Mr. Villalobos provided the Appeals Council

with a report of a psychological evaluation performed by Dr. Robert Krueger on

February 14, 2015. Dr. Krueger found that "Mr. Villalobos has multiple impairments and

he does have significant functional impairment." (AR 12). Mr. Villalobos states that

although the report was completed two months after the ALJ's decision, the report

would relate back to the relevant time period. (*Id.* at 11). The Commissioner contends

that even if the report relates to the relevant time period, "the Appeals Council still

considered the report and could not have resolved the factual matter in any other may."

(Doc. 22 at 8).

Pursuant to 20 C.F.R. §§ 404.970(b) and 416.1470(b), the Appeals Council is

required to consider evidence submitted for their review if the additional evidence is: (a)

---

[4] At several points in the briefs, Counsel appears to imply that the interpreter did not properly interpret Mr. Villalobos' testimony. The Court will not address these allegations as the interpreter was properly placed under oath and Counsel has not provided any substance to these allegations.

new; (b) material; and (c) related to the period on or before the date of the ALJ's decision. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (internal citations omitted). If the evidence submitted does not meet these criteria, "it plays no further role in judicial review of the Commissioner's decision." Id. (internal citations omitted). "If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record" which the reviewing court assesses "in evaluating the Commissioner's denial of benefits under the substantial evidence standard." *Id.* (internal citations omitted). On the other hand, if the evidence meets the criteria, but the Appeals Council did not consider it in their review of the proceedings, the reviewing court should remand the case for further proceedings. *Id.* (internal citations omitted).

Here, the Appeals Council stated that it considered the Psychological Evaluation from Dr. Krueger; however, the Council found that "[t]he [ALJ] decided your case through December 22, 2014. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 22, 2014." (AR 2).

Dr. Krueger evaluated Mr. Villalobos through an interview, the Wechsler Adult Intelligence Scale – IV, the reading portion of the Wide Range Achievement Test – Revised, and a review of Mr. Villalobos' medical records. (AR 8). Dr. Krueger diagnosed Mr. Villalobos with anxiety disorder NOS and mild mental retardation with a GAF score of 45. (AR 11). This evidence is new, as it is "not duplicative or cumulative[,]" and was not available to the ALJ at the time of the decision. *Threet v. Barnhart*, 353 F.3d 1185,

13

1191 (10th Cir. 2003) (quoting *Wilkins v. Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Dr. Krueger's report is also material. Evidence is material "if there is a reasonable possibility [it] would have changed the outcome" of the disability decision. *Id.* (quoting *Wilkins*, 953 F.2d at 96). Mr. Villalobos' evidence "meets this standard by reasonably calling into question the disposition of the case in light of the ALJ's determination" that Mr. Villalobos did not have a severe impairment at step two. *Id.*

Even if evidence is new and material, the Appeals Council will only consider it if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). Dr. Krueger's report was based on a Februay 14, 2015 examination of Mr. Villalobos, which occurred approximately two months after the ALJ issued her opinion, on December 22, 2014. (AR 8-12). However, medical records dated after the ALJ's decision may be considered, if they relate back to the relevant time period. *Shivel v. Astrue*, No. 07-5093, 260 Fed. Appx. 88, 91 (10th Cir. Jan. 7, 2008) (unpublished) (quoting *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479 (10th Cir. 1993)). Dr. Krueger's report states that "[Mr. Villalobos'] cognitive impairment clearly is of long-term duration and can be expected to persist for the foreseeable future." (AR 12). In addition to Dr. Krueger's findings, the ALJ noted that Mr. Villalobos alleged he needed reminders to change and wash his clothes, had to be accompanied when grocery shopping or attending church, and felt frustrated and nervous due to his conditions. (AR 37).

Although, as explained more fully above, these statements were not enough to raise the ALJ's duty of inquiry given that Dr. Krueger's report was not before her, in conjunction with Dr. Krueger's report, the Appeals Council did have a duty of further inquiry. *See Hawkins*, 113 F.3d at 1167 ("Isolated and unsupported comments by the

claimant are insufficient by themselves, to raise the suspicion of the existence of a nonexertional impairment"). "When a record contains evidence of a mental impairment that allegedly prevented a claimant from working, the [Commissioner] is required to follow the procedure for evaluating the potential mental impairment." *Shivel*, 260 Fed. Appx. at 91 (quoting *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993)). As there is clear evidence of a mental impairment during the relevant time period, the Appeals Council was required to discuss this evidence and its impact on Mr. Villalobos' ability to work. *Shivel*, 260 Fed. Appx. at 91. Because the Appeals Council rejected the new evidence without any discussion, the case must be remanded for further consideration.

## V. Conclusion

For the reasons discussed above, the Court concludes that the Appeals Council improperly dismissed Mr. Villalobos' new evidence of a mental impairment. On remand, the ALJ should properly analyze the new evidence.

The Court does not decide any other issues raised by Mr. Villalobos, as they are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion to Remand or Reverse*, (Doc. 17), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE